IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                              No. CR 00-869 MV

LORENZO CRUZ and
CRISTINO CRUZ,

     Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTIONS TO SUPPRESS

**THIS MATTER** came before the Court on the Defendants' Motions to Suppress Physical

Evidence Seized and Statements filed July 26, 2000 **[Doc. Nos. 27 and 29]** and Defendant

Lorenzo Cruz's Motion to Sever filed July 26, 2000 **[Doc. No. 26]**.  A hearing was held on this

matter on August 29, 2000.  The Court, having considered the motions, responses, testimony of

witnesses, oral argument of counsel and being otherwise fully informed, finds that the motions to

suppress are well-taken and will be GRANTED and that the motion to sever will be DENIED as

moot.

Recognizing the importance of protecting our borders, the Supreme Court has held that

Border Patrol officers on roving patrol need not have probable cause to conduct investigatory

stops.  Instead, agents "may stop vehicles only if they are aware of specific articulable facts,

together with rational inferences from those facts, that reasonably warrant suspicion that the

vehicles contain aliens who may be illegally in the country."  *United States v. Brignoni-Ponce*,

422 U.S. 873, 884 (1975).  A court may consider a number of factors in determining whether the

Border Patrol agent had reasonable suspicion to stop a vehicle, including: the characteristics of area; the proximity to the border; the patterns of traffic on the road; the agents' experience with alien traffic; information about recent border crossings in the area; the driver's behavior, such as erratic driving or obvious attempts to evade officers; appearance of the vehicle; appearance and behavior of the driver or passengers; and other relevant information.  *See id.*, 422 U.S. at 884-85. However, the "the essential factor" that authorizes the Border Patrol to stop a traveling vehicle on reasonable suspicion rather than probable cause is "based upon the hypothesis the person or object searched has come from outside the country."  *United States v. Venzor-Castillo*, 991 F.2d 634, 638 (10th Cir. 1993).  As the distance from the international border becomes more attenuated, the Border Patrol is not able to rely on the presumptive fact that the vehicle stopped came from outside the country, and thus "the greater the significance distance assumes in the equation used to measure the power to stop only on reasonable suspicion."  *Id.*, 991 F.2d at 639. The further one gets from the border, the greater the likelihood that an agent will stop a legitimate traveler.  Therefore, a Court must afford distance greater weight in judging the reasonableness of an officer's decision.  *Id.*[1]

The Tenth Circuit's decision in *Venzor-Castillo* is controlling. There, the Court held that a stop that occurred approximately 235 miles from the United States-Mexican border, on a road that is not a direct route from the border and that passed through thirteen New Mexico towns and

---

[1]  This Court finds that the agents in this case lacked reasonable suspicion to stop the defendants' vehicle. The distance from the border undermines not only the reasonableness of the agents' decision to stop the defendants' vehicle, but also undermines their authority to stop a vehicle on the basis of reasonable suspicion alone under 8 U.S.C. § 1357(a)(3).  The Tenth Circuit's decision in *Venzor-Castillo* upheld the District Court's grant of a motion to suppress on both grounds.  While only the determination of whether the agents had reasonable suspicion was presented to this Court in this case, this Court also recognizes that the distance of the stop from border undermines the agents' authority to rely on reasonable suspicion to stop the defendants' vehicle under 8 U.S.C. § 1357(a)(3) as well.

cities between the nearest border point of entry and the location of the stop was not reasonable under the Fourth Amendment. *See Venzor-Castillo*, 991 F.2d at 635.  In this case, the stop occurred over 250 miles from the United States-Mexican border, on a road that is not a direct route from the border and that passed through eleven New Mexican towns and cities.  Moreover, the agents in this case had no information that the vehicle they stopped had just crossed the border.  The agents were not able to run a 72-hour lane check to determine if the defendants' vehicle had just crossed the border because, being too far North, they were unable to make radio contact.  Further, the defendants' vehicle had California license plates, not Arizona, which is where the agents believed illegal aliens were entering the United States.  The evidence presented showed that the agents had no idea at all where the defendants actually entered the road, and in fact, showed that the defendants' vehicle had not just crossed the border, but had come from another state.  Therefore, because the agents had no reasonable basis for believing that the defendants' car had just crossed the border, the value of the other factors relied upon by the agents in stopping the car is significantly diminished.

The other factors relied upon by the agents are of questionable value to begin with in determining whether the agents had reasonable suspicion to believe that the defendants' vehicle contained undocumented persons.  None of the factors relied upon by the agents alone suggest criminal activity, and even taken as a whole, do little to separate the defendants' vehicle from a legitimate traveler on the highway.  While the Court recognizes that an agent is entitled to assess the facts in light of his experience, the officer must articulate more than an "inchoate and unparticularized suspicion or 'hunch.'"  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)).  The Tenth Circuit has further noted that "'some facts must be

outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous.'"

*United States v. De La Cruz-Tapia*, 162 F.3d 1275 (10th Cir. 1998) (internal citations omitted).

This Court finds that the agents acted on a hunch rather than reasonable suspicion, and therefore,

the stop of the defendants' vehicle violated the defendants' right to be free from unreasonable

seizures under the Fourth Amendment to the United States Constitution.

　　The agents testified that they justified their stop of the defendants' vehicle on the basis of

the following factors:  the car appeared to be riding low; it was an older, large car, which was said

by only one of the agents to be the type of car typically involved in alien smuggling; because of

recent accidents in the area, in an attempt to sweep dangerous vehicles off the road, the New

Mexico State Police has stopped more older cars on I-40 and has discovered that some of those

cars contained undocumented persons; it was late at night, with very few cars on the road; the

defendants' vehicle was traveling at 65 miles per hour rather than the posted speed limit of 75

miles per hour; the car slowed down to 40 miles per hour when the agents vehicle pulled in front

of it, causing the decrease in speed; the car had out of state license plates; the windows were

tinted; the driver did not look at the agents as they passed the car in the left lane; the passengers

did not look at the agents as Agent Bazill shined a flashlight into the car; there were three people

in the front seat; the driver gripped the steering wheel tightly and was sitting up close to the

steering wheel; and the occupants appeared to be Hispanic.

　　Many of the observations relied upon by the agents must be dismissed as innocent or

susceptible to varying interpretations as to be innocuous.  For example, traveling 65 miles per

hour in a 75 mile-an-hour zone is prudent driving.  As the Tenth Circuit has noted, there is no

nexus between careful driving and illegal conduct.  *See United States v. Peters*, 10 F.3d 1517,

1522 (10th Cir. 1993).  Similarly, the Court gives no weight to the fact that the vehicle slowed to

40 miles per hour when the agents' vehicle pulled in front of them.  It was the agents who caused

Mr. Cristino Cruz, the driver, to slow down.  The fact that Mr. Cruz waited two minutes to pass

the agents' vehicle does not signify suspicious activity.  It is plausible that when the agent pulled

in front of the defendants' vehicle and slowed down, the defendants believed that there was

danger up ahead of the road.  It was prudent for Mr. Cristino Cruz to simply maintain a

reasonable distance from the agents' vehicle for a reasonable period of time to determine if the

agent was warning him of danger.  Such a reaction is more consistent with innocent behavior than

suspicious, or at the very least is susceptible to many varying interpretations that this Court

affords it no weight in the analysis of determining whether the agents had reasonable suspicion.

Similarly, failure to look at the agents as their vehicle passed the defendants' car does not

signify suspicious activity, and is a factor that is so susceptible to varying interpretations that it is

innocuous.  For example, in *United States v. Covarrubia*, 911 F. Supp. 1409 (D.N.M. 1994), the

Border Patrol agent stated that it was suspicious that the driver did look at the agent's car.  *Id.*,

911 F. Supp. at 1412. Accordingly, this Court affords no weight to the agents' assertion that the

defendants did not look at the agents' car.

The fact that the defendants' car was from California does not support the agents'

determination of reasonable suspicion, but rather undermines their contention that the car had

crossed the border in Arizona.  The Tenth Circuit in *United States v. Martinez-Cigarroa*, 44 F.3d

908 (10th Cir. 1995), also found that out-of-state license plates does not "contribute measurably

to the analysis" of determining whether reasonable suspicion to stop a vehicle exists. *Id.*, 44 F.3d

at 911.

That the road was lightly traveled and that it was early morning similarly does not contribute much to the analysis of whether the defendants' vehicle contained undocumented persons. "To claim suspicious circumstances based solely on the time of day an individual chooses to travel risks labeling all who travel on what some feel is an unusual hour suspicious." *United States v. Mirnada-Enriquez*, 941 F.2d 1081, 1084-85 (10th Cir. 1991); s*ee also United States v. Frisbie*, 550 F.2d 335, 338 (5th Cir. 1977) ("Approval of a stop ... founded upon dubious 'suspicious' circumstances of such slight import would result in subjecting the thousands of tourists visiting the area to unreasonable detention whenever they travel at hours when certain routes are less frequented"). Moreover, the fact that traffic is lighter at 3:30 am does not indicate that it is more likely to be illegitimate. *See United States v. Covarrubia*, 911 F. Supp. 1409, 1415-16 (D.N.M. 1994). Although Agent Bazill testified that he suspected that vacation travelers did not drive at late hours, he did not provide a basis for this knowledge, nor does this assertion exclude other legitimate purposes for which the defendants could have been traveling (i.e. work-related). Moreover, as the agents testified, there were other cars on the road (one passing every five minutes), and the investigator from the Federal Public Defender testified, according to the New Mexico Highway Department report, that approximately 125 vehicles traveled the area of I-40 where the defendants were apprehended between 3 and 4 am on April 2, 2000. There was no testimony to support, nor is this a rational reason to believe, that these other cars, also traveling in the early morning, were engaged in illegal activity. Because traveling late at night does not separate these defendants from other legitimate travelers, the Court finds that traveling late at night is not sufficiently weighty to support a finding of reasonable suspicion.

Nor does the fact that the car was older, large, had tinted windows, or that it contained

seven people, support a determination of reasonable suspicion of alien smuggling or that there were undocumented persons in the vehicle.  None of these factors sufficiently separated the defendants' vehicle from other legitimate travelers, or were so out of the ordinary or so particular as to arise suspicion of criminal activity.  Being large, the car was designed to fit six or seven people, and therefore there was not an unreasonable number of people "packed" into the car.  In contrast to the situation in *Venzor-Castillo*, the defendants' car in this case was not riding so low that the tail pipe was hitting the roadway.  *See Venzor-Castillo*, 991 F.2d at 636.  Further, the agents testified that large, older cars were not uncommon in New Mexico, and that tinted windows were similarly not unusual in the Southwest, as many cars have tinted windows to protect drivers and passengers from the sun and heat so common in this area of the country.  This Court finds that these factors relied upon by the agents in this case are not sufficiently weighty to support the agents' determination that there was reasonable suspicion to stop the defendants' vehicle.

Notably, the officers testified that the defendants' vehicle did not make any evasive movements, such as making a U-turn to avoid detection.  Nor did the vehicle violate any traffic laws, nor did any of the passengers, when it was clear that they had been seen by the Border Patrol agents, try to avoid detection by crouching, hiding or covering their face.  Indeed, in *Venzor-Castillo*, where the Court found that the agents did not have reasonable suspicion to conduct an investigatory stop, there was more significant evidence of suspicious behavior on the part of the defendants.  There, the passengers slid down when they were seen by the Border Patrol agents in an attempt to avoid detection.  *See Venzor-Castillo*, 991 F.2d at 636.  The fact that the defendants in this case did not make any evasive movements weighs against a

determination that the agents had reasonable suspicion of criminal activity.

Finally, the fact that the occupants appeared to be Hispanic was not an appropriate factor for the agents to have considered in determining whether the defendants' vehicle contained undocumented persons.  An agent's assessment in making an investigatory stop "must arouse a reasonable suspicion that the particular person being stopped has committed or is about to commit a crime." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. at 21 n.18 ("this demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence")).  *See also United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir. 1994) (holding that reasonable suspicion cannot be based "on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped").  In this case, the defendants' Hispanic descent does not provide the agents with the necessary specificity to support a finding of reasonable suspicion.  As the agents conceded, a large portion of the residents of New Mexico are of Hispanic descent or appear to be of Hispanic descent, most of whom are law-abiding.  The defendants' ancestry simply does not direct the agents to a narrow category of potential criminal suspects, and therefore cannot support a finding of reasonable suspicion.

Looking at these factors as a whole, and considering that the stop was made so far from the United States-Mexico border, this Court finds that the agents did not have reasonable suspicion to stop the defendants' vehicle.  For the foregoing reasons and the findings more fully set forth by the Court from the bench, the Motions to Suppress for defendants Lorenzo and Cristino Cruz are granted.

8

IT IS THEREFORE ORDERED that the Defendants' Motions to Suppress Physical

Evidence Seized and Statements filed July 26, 2000 **[Doc Nos. 27 and 29]** is GRANTED.

Defendant Lorenzo Cruz's Motion to Sever filed July 26, 2000 **[Doc. No. 26]** is DENIED as

moot.


_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT COURT


Attorney for Defendant Lorenzo Cruz:
Richard C. Cauble

Attorney for Defendant Cristino Cruz:
Lissa J. Gardner

Attorney for Government:
Kelly H. Burnham (for Renee L. Camacho)